**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATRICK PIZZELLA, ACTING SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | NO. 3:17-CV-01752 |
| Plaintiff, | (JUDGE CAPUTO) |
| v. | |
| SUSQUEHANNA NUCLEAR LLC, | |
| Defendant. | |

## **MEMORANDUM**

Presently before me is Defendant Susquehanna Nuclear LLC's ("Susquehanna" or "Defendant") Motion for Summary Judgment (Doc. 23) on Plaintiff Patrick Pizzella's, Acting Secretary of Labor, United States Department of Labor,[1] ("Secretary" or "Plaintiff") claims of retaliation in violation of the Occupational Safety and Health Act, 29 U.S.C. § 651 *et seq*. ("the Act"). Specifically, the Secretary contends that Susquehanna retaliated against two former employees, Matthew Mensch ("Mencsh") and Vilas Shook ("Shook"), in violation of section 660(c)(2) of the Act, for their reporting of a workplace injury. Because employees Mensch and Shook (collectively "the employees") have produced sufficient evidence that they suffered adverse employment actions as a result of engaging in the protected activity of reporting workplace injuries, the Secretary establishes a *prima facie* case of retaliation. The Motion will therefore be denied.

### **I. Factual Background**

Defendant Susquehanna operates a nuclear power plant in Salem Township,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Secretary of Labor Patrick Pizzella, as the successor to R. Alexander Acosta, the original named party and former Secretary of Labor, will be substituted as the Plaintiff in this case. *See* Fed. R. Civ. P. 25(d).

Luzerne County, Pennsylvania ("the plant"). (Doc. 1 (Plaintiff's Complaint) and Doc. 7 (Defendant's Answer) at ¶ 8). The plant has a security team composed of "a Manager of Nuclear Security, an operations supervisor, shift commanders, shift supervisors and other management personnel in addition to more than 100 security officers." (Doc. 23-2 (Defendant's Statement of Undisputed Material Facts) and Doc. 30 (Plaintiff's Counterstatement of Undisputed Material Facts) at ¶ 2). At all relevant times for the purposes of this action, Mensch and Shook were employed by the plant as a security officer and shift commander, respectively. (Doc.1 and Doc 7 at ¶¶ 6-7; Doc. 23-2 and Doc. 30 at ¶¶ 4, 10).

On October 2, 2016, Mensch was working alone in Ready Room One at the plant when he sustained a shoulder injury resulting from an incident with his rolling chair. (Doc. 23-2 and Doc. 30 at ¶¶ 5-9). Mensch subsequently reported his injury to shift commander Shook, and shift supervisor Bradley Smith ("Smith") was instructed by fellow shift supervisor Justin Czech ("Czech") to conduct a "walk-down" of the room. (*Id*. at ¶¶ 10, 17). Mensch suffered a "serious and permanent" injury to his shoulder from this incident that made him unable to work. (*Id*. at ¶¶ 9, 46). Within 36 hours of a "human performance event" where an error could have occurred, such as this event, Susquehanna conducts a "Prompt Investigation" and evaluates whether or not "human performance errors" were a contributing factor to the event and thus could be prevented in the future. (*Id*. at ¶¶ 13-15).

The "Prompt Investigation" of this incident was kicked off by Smith's "walk down" of Ready Room One, wherein Smith tried to recreate the incident by wheeling himself across the room and testing the conditions under which the chair, and the person sitting in it, would fall. (*Id*. at ¶¶ 10, 17, 19-20). Smith successfully recreated the way the chair would fall out from under its occupant. (*Id*. at ¶ 20). Shook reported the incident to Manager of Nuclear Security Brian Martonick ("Martonick"), who, as a result of Smith's findings, directed the

2

security team to remove the specific chair involved from circulation. (*Id*. at ¶¶ 22-25). It was determined that, at minimum, the chair had a defect pertaining to gun belts getting caught on the armrests, making it difficult for officers to get out of the chair. (*Id*. at ¶¶ 22-25). Other steps in the "Prompt Investigation" included speaking to Mensch, administering first-aid treatment, and evaluating Mensch for the use of drugs or for impairment caused by fatigue. (*Id.* at ¶¶ 26-30).

The "Prompt Investigation Report," as completed by Czech, "initially concluded that the injury to the employee resulted from 'human performance error' . . . and 'unexpected equipment conditions.'" (*Id*. at ¶¶ 31-32). The report concluded that the chair was "not appropriate" for use and that it was at least partially Mensch's fault for causing the injury based on the way he was sitting on the chair. (*Id*. at ¶¶ 33-34). This report was then sent to the "Management Review Committee," ("MRC") which is comprised of a variety of plant employees who take or do not take plant-wide action in response to these reports. (*Id*. at ¶¶ 35-37). The MRC "objected to the team's suggestion that the chair caused the incident," and, in conference with Czech, the references to the chair being defective were removed from the report with the cause revised to solely be a "human performance error" by Mensch. (*Id*. at ¶¶ 38-43).

In line with the result of the investigation being deemed a human performance error resulting in a "lost-time injury," the plant's human performance clock was reset. (*Id*. at ¶¶ 47, 51, 56-57). The human performance clock is an instrument which indicates to the employees how many days have elapsed since a human performance error has occurred. (*Id*. at ¶ 48-50). Susquehanna resets this clock when certain human performance errors occur. (*Id*. at ¶¶ 47, 51-53, 55). Susquehanna subsequently communicates the specific error to the employees with the aim to prevent employees from committing the same error in the future. (*Id*. at ¶ 50). There are different levels of clock resets that occur ranging from

3

a single crew clock reset to a plant-wide site clock reset depending on what is appropriate in light of the specific error. (*Id*. at ¶¶ 49, 51-52).

Moreover, the plant pays non-collective bargaining agreement employees, like Mensch and Shook, bonuses on top of their typical compensation for good performance. (*Id*. at ¶¶ 59A-61A).[2] Each employee is given a bonus based on an individual appraisal with the appraisals in this case conducted by Martonick. (*Id*. at ¶ 61B). As a result of the injury occurring, Martonick recommended that Mensch and Shook receive reduced bonuses. (*Id*. at ¶¶ 64-66). General manager of nuclear programs, Tom Iliadis ("Iliadis"), and Plant manager Bob Franssen approved this reduction. (*Id*. at ¶¶ 67-68). The employees were informed of this reduction in December, 2016. (Doc. 30 and Doc. 32 (Defendant's Response to Plaintiff's Additional Undisputed Material Facts) at ¶ 79).

On January 4, 2017, Shook proceeded to file a complaint with the Occupational Safety and Health Administration ("OSHA") as a result of the foregoing events. (Doc.1 and Doc. 7 at ¶ 16). OSHA then proceeded to investigate the employees' complaint. (*Id*. at ¶ 18). The Secretary filed this action against Susquehanna on September 27, 2017 alleging that the Defendant violated section 660(c)(1) of the Act by retaliating against the employees. (*See* Doc. 1). Susquehanna responded on December 1, 2017 denying the allegations. (*See* Doc. 17). Susquehanna then filed the instant Motion for Summary Judgment, including a Brief in Support thereof and a Statement of Undisputed Material Facts on August 12, 2019. (*See* Doc. 23; *see also* Docs. 25, 26). Susquehanna claims that: (a) the Secretary has not established a causal connection between the employees reporting the injury and receiving reduced bonuses; and (b), in the alternative, the Secretary

---

[2] Defendant has produced Paragraph numbers 59-61 twice in its Statement of Material Facts, so I will refer to the two sets of relevant numbers as 59A - 61A and 59B - 61B. The Defendant returns to consecutive numbering starting at Paragraph 62.

4

has not shown that reducing pay for contributing to or causing human performance errors is not a legitimate, non-discriminatory purpose for reducing pay. (*See* Doc. 23-3). The Secretary responded with a Memorandum of Law in Opposition as well as a Counterstatement of Undisputed Material Facts on September 3, 2019. (Docs. 29, 30). A Reply Brief in further support of the Motion (Doc. 31) and a Response to Plaintiff's Additional Undisputed Material Facts (Doc. 32) was filed by Susquehanna on September 17, 2019.

The Motion has been fully briefed and is ripe for review.

### II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a motion for summary judgment, I will consider "all probative materials of record, with inferences drawn in favor of the non-moving party." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986)); *Brooks v. Kyler*, 204 F.3d 102, 105 n. 5 (3d Cir. 2000)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Santini v. Fuentes,* 795 F.3d 410, 416 (3d Cir. 2015) *(*citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute over a material fact is 'genuine' if a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Dental*

5

*Laboratories Inc. v. Dentsply Intern., Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp.*, 477 U.S. at 323. "When considering whether there exist[s] genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. I need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the court's function is not to weigh the evidence or determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49).

### III. Discussion

The Secretary asserts claims against Susquehanna for retaliation against the employees in violation of the Act. Under the Act:

> No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or other of any right afforded by this chapter.

29 U.S.C. § 660(c)(1). A claim brought under this section of the Act can be referred to as a retaliation or an 11(c) claim. *See Acosta v. Lloyd Industries, Inc.*, 291 F.Supp.3d 647, 653 (E.D. Pa. 2017). "Courts apply the same principles applicable in other retaliation cases to those brought under Section 11(c) of the OSH Act." *Id*. at 653 (citing *Reich v. Holy Shoe Co.*, 32 F.3d 361, 365 (8th Cir. 1994); *Kennard v. Louis Zimmer Communications, Inc.*, 632 F.Supp. 635, 638 (E.D. Pa. 1986) ("OSHA is not distinguishable from those federal statutes which protect against discrimination based on defined characteristics")). Therefore, to survive a motion for summary judgment on a section 660(c)(1) retaliation claim, a plaintiff must make a *prima facie* case showing of: "(1) participation in a protected activity, (2) a subsequent adverse action by the employer, and (3) evidence of a causal connection between the protected activity and the adverse action." *Id.* (citing *Reich*, 32 F.3d at 365); *see also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000); *Smith v. University of Scranton*, 2018 WL 3361060, at *4 (M.D. Pa. 2018). If the plaintiff makes this *prima facie* case, the defendant must then "articulate an appropriate non-discriminatory reason for its action." *Id.*; *see also Hanczyc v. Valley Distributing and Storage Co., Inc.*, 2012 WL 3890213, at *6 (M.D. Pa. 2012). The burden then shifts back to the plaintiff, who must show that this articulated reason is merely pretextual. *Id*.

In moving for summary judgment, Susquehanna argues that the Secretary fails to establish a *prima facie* case of retaliation because he is unable to establish any causal

7

connection between the employees' reporting of the injury and their subsequent reduction in pay. (Doc. 23-3 at 5 -11). According to the Secretary, however, a *prima facie* case of retaliation and a causal connection has been established because "Susquehanna would not have reduced Mensch and Shook's bonuses but for their reporting of his injury". (Doc. 29 at 7). Susquehanna further argues that the Secretary has failed to offer evidence that Susquehanna's legitimate, non-discriminatory reason for reducing the bonuses, i.e. that the employees contributed to a human performance error and site-wide clock reset, was a pretext for retaliating against them. (Doc. 23-3 at 11-15). The Secretary responds further, however, that this basis for a bonus reduction is pretextual to the extent that it is applied in the name of safety but has the effect of punishing those who report and altogether dissuades them from reporting. (Doc. 29 at 9-18).

Susquehanna does not dispute that the Secretary can establish that Mensch and Shook, in reporting Mensch's injury, engaged in a protected activity that resulted in an adverse employment action: "[i]t is undisputed in this case that Matt Mensch and Shift Commander Vilas Shook reported Mensch's workplace injury, as required by Susquehanna's safety procedures, and that both suffered reductions in their year-end bonuses." (Doc. 23-3 at 6); *see also* 29 U.S.C. §§ 657, 673 (requiring employers to maintain accurate records and statistics of workplace injuries); 29 C.F.R. § 1904.36 (prohibiting employers from discriminating against an employee for reporting work related injuries); (Doc. 1 at 19-20) (alleging that employees engaged in a protected activity). Susquehanna continues: "[h]owever, the Secretary cannot establish the necessary causal connection in this case." (*Id*.).

In a *prima facie* retaliation case, for establishing a causal link, it is necessary for the employee to show that engagement in the protected activity was either the "but for" reason or "substantial reason" why the adverse action occurred. 29 C.F.R. § 1977.6; *Perez v. Lloyd*

*Industries, Inc.*, 2019 WL 3530550, at *9-10 (E.D. Pa. 2019); *see also Leese v. Department of Insurance*, 2019 WL 3246746, at *9 (M.D. Pa. 2019) (holding that, for a Title VII retaliation claim, but-for causation was not necessary to establish a *prima facie* case). This link is generally shown in one of two ways: (1) timing of the adverse action; or (2) "evidence of ongoing antagonism" following engagement in the protected activity. *Culler v. Shinseki*, 840 F.Supp.2d 838, 846 (M.D. Pa. 2011) *aff'd sub nom. Culler v. Secretary of U.S. Veterans Affairs*, 507 Fed.Appx. 246 (3d Cir. 2012) (citing *Abramson v. William Paterson Coll.*, 260 F.3d 265, 288 (3d Cir. 2001). However, I am not limited to solely these considerations and may, especially where temporal proximity is lacking, consider a "'broad array of evidence'" in determining whether a causal connection exists. *Id*. (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281, 284 (3d Cir. 1989)). Relevant considerations in this analysis are "intervening antagonism or retaliatory animus, inconsistencies in the employer's proffered reasons for taking the adverse action, or any other evidence in the record sufficient to support the inference of retaliatory animus." *Id*. at 847 (citing *Farrell*, 206 F.3d at 279-81); *see also Breslin v. Dickinson Tp.,* 2012 WL 7177278, at *16 (M.D. Pa. 2012), *report and recommendation adopted,* 2013 WL 654491 (M.D. Pa. 2013) (discussing the various ways to find cause in a retaliation claim). This causation analysis also includes whether the employer acted under a pretextual reason. *See Farrell*, 206 F.3d at 286 ("It is enough to note that we will not limit the kinds of evidence that can be probative of a causal link any more than the courts have limited the type of evidence that can be used to demonstrate pretext."); *see also Lumban-Tobing v. Potter*, 2005 WL 2100691, at *4 (M.D. Pa. 2005) (holding that pretext and causation evidence can be examined together).

Both parties further call my attention to OSHA's newly promulgated policies which mandate that employers "establish a reasonable procedure for employees to report work-related injuries and illnesses," and "not discharge or in any manner discriminate against any

9

employee for reporting a work-related injury." 29 C.F.R. §§ 1904.35(b)(1)(i), (iv). Subsection (i) also states that a "procedure is not reasonable if it would deter or discourage a reasonable employee from accurately reporting workplace injury or illness." 29 C.F.R. § 1904.35(b)(1)(i).

Only one case has squarely dealt with this regulation and its application in the current context. In *Acosta v. Dura-Fibre LLC*, the Court held that the Secretary raised a genuine issue of material fact in his retaliation claim under the newly promulgated regulations. 2018 WL 2433589, at *7 (E.D. Wis. 2018). Specifically, the Court found that a policy which assigned disciplinary points based on reporting a workplace injury could be pretextual in nature, especially to the extent that it would not punish employees who committed the same act, but did not get injured. *Id*.

Following the opinion in *Dura-Fibre*, OSHA issued a clarification regarding subsection (iv) of the new regulations which stated that employers may still utilize workplace safety incentive programs if they are applied consistently and legitimately. *Clarification of OSHA's Position on Workplace Safety Incentive Programs and Post-Incident Drug Testing under* 29 C.F.R. § 1904.34(b)(1)(iv), OSHA Std Interp 1904(B)(1)(IV), 2018 WL 8868167(Oct. 11, 2018). It is Susquehanna's position that this clarification speaks to policies like Susquehanna's, which aims to only promote workplace safety and which is applied uniformly, thereby mitgating the finding in *Dura-Fibre*. (*See* Doc 23-3 at 15-18). The Secretary responds, however, that no subsection (iv) claims were raised in the present complaint and that subsection is therefore inapplicable, but to the extent that it may apply, employees do not feel free to report their injuries. (Doc. 29 at 19-20). Regardless, the *Dura-Fibre* court did not rest its decision on subsection (iv), rather the Court focused on the application of subsection (i) and whether the policy was reasonable, finding that a reasonable jury could deem it to be an unreasonable policy. 2018 WL 2433589, at *7

Here, therefore, while the adverse action took place some time after the reporting of the injury, while Susquehanna did not engage in a straightforward pattern of antagonism, and while Susquehanna seemingly followed its internal policy, the Secretary nonetheless raises a genuine issue of material fact as to whether or not this policy is reasonable and unduly punishes employees for or puts employees in fear of reporting workplace injuries. The Defendant's Briefs and Statements of Undisputed Facts are replete with examples of how its policy was meant to ensure the safety of its employees and its facility as well as how Susquehanna treats all injured employees similarly, but the Defendant nonetheless fails to adequately rebut the Plaintiff's evidence that employees are afraid to report injuries for fear of discipline and that some have not been punished for similar accidents because they were not injured. For instance, the Secretary points to, and Susquehanna does not conclusively dispute, multiple employees reports of being fearful of reporting injuries. (Doc. 30 at ¶¶ 105-06). Further, the record indicates, and Susquehanna does not conclusively dispute, that others have fallen out of the same chair as Mensch, but did not sustain injuries, and did not report the incidents out of fear of retaliation. (*Id*. at ¶ 108).

This inconsistent application of the policy to the same behavior as well as the fear of reporting by employees could make this policy unreasonable and a pretextual justification for punishing employees who report their injuries. This fear is further evidenced by the drastic consequences, in the form of a site wide clock reset and reduced bonuses, for having such injuries occur. (*See* Doc. 23-2 and Doc. 30 at ¶¶ 47, 51, 56-57, 64-66). Susquehanna also fails to show how it complied with its policy to the extent that it removed the chair from circulation because it was unsafe, but blamed Mensch, in entirety, for causing the event. (*See* Doc. 23-2 and Doc. 30 at ¶¶ 22-25, 31-33, 38-43). In considering only the consequences of the event, there is a question as to whether Susquehanna's policy would serve to discourage an employee from reporting a workplace injury.

11

Further, while Susquehanna contends that the Secretary's citation to interviews with various employees regarding fear of reporting injuries and failure to report injuries, all conducted by an OSHA investigator, represents potential hearsay evidence and unsupportable speculation (Doc. 31 at 11-12), this testimony may be brought in by direct testimony at trial, and it is properly considered on the instant motion. *See Bhanu v. Snyders of Hanover*, 2012 WI 5420548, at *3 (M.D. Pa. 2012) (holding that affidavits containing hearsay are admissible if plaintiff could present such evidence through direct testimony at trial); *General Refractories Co. v. First State Ins. Co.*, 2012 WL 1285901, at *2 (E.D. Pa. 2012) ("A non-moving party's evidence must only be convertible to admissible form at trial in order to survive summary judgment."); *see also J.F. Feeser, Inc. v. Serv-A-Portion, 909 F.2d 1524, 1542* (3d Cir. 1990) ("[H]earsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony.").

As such, looking at the "broad array" of circumstantial evidence in the light most favorable to the non-moving party, the Secretary creates a genuine issue of material fact which is unsuited for disposition on summary judgment. Moreover, to the extent that a causal link has been found to exist on the basis of an allegedly pretextual policy, Susquehanna also fails in its claim at this stage that it had a legitimate non-discriminatory reason for the policy. *See Farrell*, 206 F.3d at 286 (holding that evidence of pretext supporting a causal link can also be used to similarly establish pretext, in general, as the questions can be similar). Here, Susquehanna claims that its policy creates a safe workplace and that it has a legitimate interest in maintaining that safety, however, as has been explained, there are genuine issues of material fact over whether or not that policy simply punishes those who get injured and altogether dissuades people from reporting in violation of the Act. The question of whether the employees were punished for reporting

the injury is inextricably intertwined with whether the explanation for their reduction in bonuses was the real reason and the two inquiries can thus be considered together. *See Lumban-Tobing v. Potter*, 2005 WL 2100691, at *4-5.

The Secretary therefore, by pointing to evidence that Susquehanna's policy caused the retaliation, that the policy is unreasonable, and that the policy is a pretext for retaliation, has established a *prima facie* case and has raised genuine issues of material fact as to whether Susquehanna violated the Act.

### III. Conclusion

Because the Secretary states a *prima facie* case for retaliation, Susquehanna's motion for summary judgment will be denied.

An appropriate order follows.

October 16th, 2019  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge